**John E. WARD and Shirley A. Ward, Plaintiffs,**

v.

**AMERICAN HAWAII CRUISES, INC. and American Global Lines, Inc., Defendants.**

**Civ. No. 87–0341.**

United States District Court, D. Hawaii.

June 17, 1988.

Order Denying Motion for Reconsideration Sept. 28, 1988.

Order Awarding Prejudgment Interest Sept. 30, 1988.

Paul F. Cronin, Cronin Fried Sekiya Kekina & Fairbanks, Honolulu, Hawaii, for plaintiffs.

Leonard F. Alcantara and Robert G. Frame, Alcantara & Frame, Honolulu, Hawaii, for defendants.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

FONG, Chief Judge.

This case arises out of an injury sustained by plaintiff John E. Ward while employed as an able-bodied seaman aboard S.S. Independence on March 3, 1987. John Ward brought this action against defendants American Hawaii Cruises, Inc. and American Global Line, Inc. as operator and vessel owner. In addition, plaintiff Shirley A. Ward brought a claim for loss of consortium arising out of John Ward's injuries. This case came on for trial before the court without a jury, and the court, having con-

sidered the evidence presented at trial, and the arguments of counsel, finds as follows:

## FINDINGS OF FACT

### A. Liability

Plaintiff John Ward is 61 years old, and was employed as an able-bodied seaman with defendant American Hawaii Cruises aboard the S.S. Independence at the time of the accident. Ward has been a merchant seaman since 1944. He has been an able-bodied seaman since 1957.

The accident occurred at about 2:30 p.m. when Ward was on his 1200 to 1600 watch. His assigned task had been to grease the lines to reduce chaffing. Ward had just finished greasing the last line and had stood up to walk away when one of the after spring lines parted and struck him on the left knee. Ward had seen nothing out of the ordinary. Ward ended up face-down on the deck, nearly unconscious; he had sustained serious knee injuries and a cut to his forehead.

On March 3, 1987, the day of the accident, the vessel S.S. Independence docked in Hilo Harbor starboard side to, at about 0830 hours. The vessel was positioned with its bow to the North. The prevailing winds were out of the Northwest which means that they were off the port bow of the vessel. At the time the vessel was docked, the ship's log noted that there was moderate surge and force 4 winds, which would also be considered moderate. The following lines were used to secure the vessel: an outboard bow line, two head lines, a breast line, a forward spring line, two after spring lines, and two stern lines. It is unclear whether there was an extra forward spring line or an after breast line. There were no further entries in the log between 0830 and 1200 hours concerning surge. Had there been high surge, it should have been entered in the log.

All of the mooring lines used aboard the Independence are three-inch polydacron lines. The Independence does not have larger and stronger lines even though they are available. The line that parted was not new. Otherwise nothing is known about the condition of the line that parted because, despite plaintiffs' requests for production of the line, defendants lost track of it. All that is known concerning the location of the line is that the Second Officer, on duty at the time of the accident, brought the line back on board. He did not perform any tests on the line, and did not ask anyone to take custody of the line. Since the time of the accident, no one has inquired with him regarding the location of the line. While it is possible that the line was spliced and put back into service, evidence that this in fact occurred is too tenuous to persuade the court.

The evidence shows, and the court so finds, that the line parted where it lead through the chock. Although the chock had roller bitts, designed to reduce chaffing, the after spring lines tended forward and down, which means that the line chafed on the bottom of the chock rather leading around the well of the roller bitt. This would contribute to the weakening and ultimate failure of the line.

No chafing gear was used that day even though the officers in command testified that the lines were taking heavy stress. Instead, grease was applied. The practice of greasing lines may ultimately damage the lines because the grease attracts dirt and debris which works its way into the line. Furthermore, application of grease is not as effective as chafing gear in the prevention of chafing.

After the accident occurred, further precautions were taken. An entry in the log at 1530 hours, a few hours after the accident, the log indicates that steam was put to the engine and the port anchor was walked out under foot. An entry at 1600 hours indicates that gangway was secured, extra lines were lead, and that there was moderate surge.

From all the foregoing circumstances, the court concludes that the S.S. Independence, specifically the mooring line that parted, was in an unseaworthy condition. Furthermore, the court finds that the defendants were negligent in failing to maintain sound lines and to take proper precautions on the vessel. The unseaworthiness

of the vessel and the negligence of defendants' employees proximately caused plaintiff's injuries. The court further finds that plaintiff John Ward acted properly at all times and did not contribute to the accident or injury.

### B. Injury

Immediately after the accident, plaintiff was taken to a hospital in Hilo. The doctors in Hilo, however, did not diagnose the condition of plaintiff's knee. Since plaintiff's left knee could not support his weight, he fell at the hospital and cut his toe and struck his head.

Ward left the hospital and sailed with the ship back to Honolulu. Ward was then admitted to Straub Clinic. Dr. Gerald Mayfield, plaintiff's treating physician, diagnosed complete ruptures of the anterior cruciate ligament, posterior cruciate ligament, and medial collateral ligament, and a tear of the posterior capsule. Because of some complications in preparatory tests, plaintiff's surgery did not take place until March 11, 1987. The surgery involved repairing plaintiff's torn ligaments and capsule. Ward's anterior cruciate was so severely damaged that muscle had to be used in its place.

For one week after the surgery, plaintiff's leg was kept in motion 24 hours a day by a machine that was attached to his leg. For two weeks after the surgery, it was too painful for plaintiff to get out of bed. He spent a total of 19 days in the hospital.

Ward was discharged from Straub on March 27, 1987. After he left Straub, he was on crutches for about six weeks, and he had to wear a full length brace for two months, even when he was asleep. He started physical therapy at Straub right away, and when he completed his program there, he started a physical therapy program at Chart. Ward attended therapy sessions two to three times a week for about two and a half hours each session.

While plaintiff was recuperating and attending therapy sessions, he stayed at the seaman's home in Honolulu except for one week when he stayed at the YMCA. He had to go out for all of his meals. During this period, plaintiff was unable to go home to Mississippi, even though his wife had back surgery and his only daughter was married. Plaintiff did not go home because Dr. Mayfield advised him to continue the therapy program, and there were no similar facilities near his home. In addition, plaintiff felt that it was a very long trip for an injured person.

Dr. Bernard M. Portner, a specialist in non-surgical orthopedic problems, examined Ward on December 10, 1987, and April 25, 1988. During the December 1987 exam, Dr. Portner noted that plaintiff complained of numbness, popping sensations, pain from the surgical scar, internal pain, and fear of moving in certain ways. Upon examination, Dr. Portner noticed a diminution of sensation in the front part of Ward's knee. While plaintiff had the full range of motion, there was instability in lateral movement indicating that his tendons were lax. Further tests indicated laxity in the anterior cruciate and the posterior cruciate.

During the April exam, Dr. Portner noted that the laxity had not improved. He opined that the laxity was permanent. This laxity means that plaintiff's knee is unstable. While plaintiff's knee can withstand walking and moderate stress, more than moderate force could result in reinjury of the knee. Dr. Portner, like the other doctors, fears that plaintiff's knee might not support him in an emergency situation.

Based upon all the foregoing evidence, the court finds that Ward has sustained $175,000.00 in general damages, for permanent impairment of his left knee, past and future pain and suffering, and cosmetic damage.

Ward's wife, Shirley Ward, is also claiming damages for loss of consortium. Because of his injury, Mr. Ward has missed four months that he would have been at home. Mr. and Mrs. Ward have been married for over 27 years. They have two children. Mrs. Ward had flown to Hawaii in January of the year he was injured to vacation with him. The year that Mr. Ward was injured, Mrs. Ward ruptured a

disk and had to have back surgery. Also that year, the Wards' daughter was married.

Mrs. Ward testified that when her husband is home he shops, cleans, does dishes, yard work and laundry. Since Mr. Ward could not come home in 1987, Mrs. Ward had to hire someone to mow the lawn for her.

For recreation, Mr. and Mrs. Ward fish, go out to eat, and work in the yard. Mrs. Ward tries to take off from work when her husband is home. Mrs. Ward testified that she and her husband have a very close relationship. Mrs. Ward also testified that it was very hard on the family while Mr. Ward was injured.

The court finds that Shirley A. Ward has suffered damages in the amount of $20,-000.00 for loss of consortium.

## C. Economic Loss

On February 2, 1988, Dr. Mayfield issued a fit-for-duty slip, enabling Ward to return to his employment. On March 19, 1988, Ward returned to his employment as an able-bodied seaman aboard the S.S. Independence.

The court is faced with an unusual situation with regard to the issue of loss of future earnings. While plaintiff is currently employed in his former position, and plaintiff desires to work as an able-bodied seaman, plaintiff's attorney contends that his client is not fit for duty and is therefore entitled to damages for loss of future earnings. The evidence establishes that plaintiff is currently performing his usual duties aboard the Independence. There have been no complaints regarding his work or attitude. Plaintiff's doctors, however, have expressed concern that plaintiff's knee might not support him in an emergency situation or in very rough seas. Furthermore, if plaintiff slips or trips, he could reinjure his knee. On the other hand, if plaintiff steps carefully and makes sure that his knee tracks properly, he will be all right.

Ward's own views are that that the Hawaiian waters are calm, and that because he works on a passenger vessel, any rough waters are usually avoided. Plaintiff feels that he can do his job. He rarely has to go out on deck at night. He says that his work aboard the Independence, because it is a passenger vessel, is light compared to what it would be on other merchant vessels.

The court notes that the Hawaiian waters can become very rough, particularly in the channels. Furthermore, even though passenger lines may place a high premium on passenger safety and comfort, emergency situations can occur. The court finds, however, that plaintiff desires to work, and he has obtained the proper medical authority. Under these circumstances, the court cannot preclude him from pursuing his chosen profession. Plaintiff is currently working; medical opinions indicating that he might reinjure his knee in the future, and thus be unable to work, are speculative at best. The same is true for the types of conditions that might precipitate such reinjury. Plaintiff has therefore not sustained his burden of proving loss of future earnings.

Plaintiff's claim for loss of past earnings, on the other hand, is compensable. The court is persuaded by Dr. Fitzpatrick that an average of plaintiff's income for the last five years would be appropriate to determine plaintiff's loss of future earnings, were he entitled to them. For purposes of the last year, however, the court is not persuaded that plaintiff would have gone elsewhere to work, having completed only one tour of duty on the Independence. Thus, for purposes of loss of past earnings, the court will measure plaintiff's damages by what he would have earned with American Hawaii Cruises.

The evidence shows that Ward was paid through March 10 1987, and that he resumed work on March 19, 1988, and thus, he was out of work for 373 days. Plaintiff's working cycle with American Hawaii Cruises is 181 days comprised of 125 days on and 56 days off. Two working cycles equal 362 days, and thus the remaining 11 days are left to be accounted for in order to arrive at 375, the number of days between

the last day he was paid for his employment, and the first day of his re-employment. Since the working to non-working days has about a two to one ratio, the court will consider 7 out of the 11 remaining days to be working days. Thus, the court finds that plaintiff missed 257 working days as the result of his injury.

The evidence shows that Ward was earning $1,673.81 per month at the time he was injured. Since Ward missed approximately 8.5 months as the result of his injury, his lost wages equal $14,227.39. In addition, Ward lost the benefit of room and board. The court finds that the value to Ward of the meals provided him on board the Independence equals $12 per day and the value of his room, linens, and other essentials equals $12 per day as well. The total of lost room and board thus equals $6,168.00. One factor offsetting this figure, however, is the maintenance payments of $8 per day from March 11, 1987, through February 1, 1988. These payments offset plaintiff's loss of room and board by $2,616.00. Finally, plaintiff lost health and welfare benefits of $6.86 per day, which would equal $1,763.02. Evidence of loss of vacation pay as a separate benefit not included in the monthly wage was inconclusive, and therefore will not be awarded. In sum, the court finds that plaintiff lost a total of $19,542.41 in earnings.

The court finds that Ward is also entitled to prejudgment interest in an amount to be decided by this court upon application by plaintiff.

## CONCLUSIONS OF LAW

The court has jurisdiction over this action pursuant to the Jones Act, 46 U.S.C.App. § 688, and general admiralty jurisdiction, 28 U.S.C. § 1333.

■ Plaintiff brings his claims for unseaworthiness under general maritime law and for negligence under the Jones Act. Under the doctrine of unseaworthiness, a shipowner's liability to seamen for injuries resulting from unseaworthiness is absolute, and unrelated to principles of negligence. *Petterson v. Alaska S.S. Co., Inc.*, 205 F.2d 478 (9th Cir.1953). The exercise

of diligence does not relieve the owner of its obligation to furnish adequate appliances. *Mahnich v. Southern S.S. Co.*, 321 U.S. 96, 64 S.Ct. 455, 88 L.Ed. 561 (1944). A ship must be reasonably fit to enable the crew to perform their duties with reasonable safety. *Reinhart v. United States*, 457 F.2d 151 (9th Cir.1972).

Applying the doctrine of unseaworthiness, the Court of Appeals for the Ninth Circuit held in a case similar to the present case that "[i]f the spring line was put to a proper use in a proper manner, it is logical to infer that it would not have broken unless it was defective—that is, unless it was unseaworthy." *Nitkowski v. Prudential-Grace Lines, Inc.*, 469 F.2d 93 (9th Cir.1972). *See also Matias v. Pacific Far East Line, Inc.*, Civil No. 74–199, slip op. at 2 (D.Haw. July 7, 1976) ("The SS Mariposa was unseaworthy in that the spring line used was inadequate to hold the vessel. A proper line would not have parted.").

■ The court recognizes that the standard is not one of perfection; rather, the owner's duty is to "furnish a vessel and appurtenances reasonably fit for their intended use." *Mitchell v. Trawler Racer, Inc.*, 362 U.S. 539, 80 S.Ct. 926, 4 L.Ed.2d 941 (1960). The failure of a piece of vessel equipment under proper and expected use is sufficient to establish unseaworthiness. *Lee v. Pacific Far East Line, Inc.*, 566 F.2d 65 (9th Cir.1977). In the present case, the line that parted was being used as intended to secure the vessel. The conditions on the day of the accident, though perhaps not ideal, were far from extraordinary. Thus, the court finds that the line, failing in its intended use, was unseaworthy.

Plaintiff also claims that he is entitled to recover for negligence under the Jones Act. Several cases have noted that an action for unseaworthiness "swallows" asserted liability for negligence under the Jones Act because unseaworthiness does not require any showing of fault. *See Lee v. Pacific Far East Line, Inc.*, 566 F.2d at 67; *American President Lines, Ltd. v. Redfern*, 345 F.2d 629, 631 n. 1 (9th Cir.1965); *Curry v.*

*United States,* 327 F.Supp. 155, 161 (N.D. Cal.1971). The court finds, however, that the evidence in this case satisfies the showing required to find unseaworthiness as well as the additional factor of fault required to find negligence.

The standard of liability under the Jones Act is the same as under the FELA. *Ferguson v. Moore–McCormack Lines,* 352 U.S. 521, 523, 77 S.Ct. 457, 458, 1 L.Ed.2d 511 (1957). Thus, the quantum of evidence required to support a finding of negligence under the Jones Act is lower than that which is required for common law negligence. *Perry v. Morgan Guaranty Trust Company of New York,* 528 F.2d 1378 (5th Cir.1976). Under the Jones Act, even the slightest negligence is sufficient to sustain a finding of liability. *See Rogers v. Missouri Pacific Railroad Co.,* 352 U.S. 500, 506, 77 S.Ct. 443, 448, 1 L.Ed.2d 493 (1957); *Brown v. Cliff's Drilling Co.,* 638 F.Supp. 1009 (E.D.Tex.1986); *Springborn v. American Commercial Barge Lines, Inc.,* 767 F.2d 89 (5th Cir. 1985) (liability justified if "employer negligence played any part, even the slightest, in producing the injury") (*quoting Rogers v. Missouri Pacific Railroad Co.,* 352 U.S. 500, 77 S.Ct. 443, 1 L.Ed.2d 493 (1957)). Applying these rules to the present case, the court finds that the defendants were negligent in failing to maintain sound lines and take proper precautions. The court further finds that this negligence caused plaintiff's injury.

In cases tried under the court's admiralty jurisdiction, the court must grant prejudgment interest "unless peculiar circumstances justify its denial." *Vance v. American Hawaii Cruises, Inc.,* 789 F.2d 790, 794 (9th Cir.1986) (*quoting Dillingham Shipyard v. Associated Insulation Co.,* 649 F.2d 1322, 1328 (9th Cir.1981). Examples of when prejudgment interest may be denied include unwarranted delay in prosecuting the action; claims or defenses asserted in bad faith; and uncertainty regarding claims or damages. *See Alkmeon Naviera, S.A. v. M/V Marina L.,* 633 F.2d 789, 798 (9th Cir.1980). The fact that the damages are for intangible harm does not render prejudgment interest inappropriate. *Vance,* 789 F.2d at 794. In the present case, the court does not find any reason justifying the denial of prejudgment interest.

Shirley A. Ward has a claim under general maritime law for the loss of the society of her husband. *American Export Lines v. Alvez,* 446 U.S. 274, 100 S.Ct. 1673, 64 L.Ed.2d 284 (1980). Loss of society includes the loss of the positive benefits that the injured seaman's spouse would have received such as love, affection, care, attention, companionship, comfort and protection. *See See–Land Services, Inc. v. Gaudet,* 414 U.S. 573, 94 S.Ct. 806, 39 L.Ed.2d 9 (1974). The court finds that Shirley Ward has sustained compensable harm for the loss of her husband's society which was caused by his injury.

## CONCLUSION

The court finds that John E. Ward is entitled to general damages in the amount of $175,000.00.

The court finds that John E. Ward is entitled to lost earnings in the amount of $19,542.41.

The court finds that Shirley A. Ward is entitled to damages for loss of consortium in the amount of $20,000.00.

The court finds that John E. Ward is entitled to prejudgment interest in an amount to be determined by the court upon application by plaintiff.

IT IS SO ORDERED.

## ORDER DENYING MOTION FOR RECONSIDERATION

This case arises out of an injury sustained by plaintiff John E. Ward while employed as an able-bodied seaman aboard S.S. Independence on March 3, 1987. John Ward brought this action against defendants American Hawaii Cruises, Inc. and American Global Line, Inc. as operator and vessel owner. The case was tried without a jury and the court, by order entered June 17, 1988, awarded the plaintiff general

damages in the amount of $175,000.00 and lost earnings in the amount of $19,542.41.

The court included in its award of past lost earnings the pecuniary value to plaintiff of his room and board aboard the vessel. The court's finding was based upon the expert testimony of Dr. Fitzpatrick, an economist, who testified that the room and board furnished to plaintiff aboard the vessel had a pecuniary value to plaintiff of $24 per day, $12 per day each for room and board. This figure was independently supported by the fact that plaintiff had in fact paid $12 per day for lodging at the seaman's home while he was recuperating. In order to avoid double recovery, however, the court reduced this award by the amount of maintenance payments that plaintiff received from defendant.

■ Defendants move the court to reconsider the award of the room and board component of plaintiff's lost earnings. Defendants' motion is based upon several arguments. First, defendants argue that plaintiff received double recovery since the court awarded plaintiff the value of his room and board when he had already received maintenance payments from defendants. This argument is completely devoid of merit since the court clearly offset the award for the value of room and board by the maintenance payments received by plaintiff. The cases cited by defendants in support of their argument merely stand for the proposition that a plaintiff cannot recover maintenance payments when he has already recovered for the lost value of room and board aboard the vessel. *See McCarthy v. American Eastern Corporation*, 175 F.2d 727, 729 (3rd Cir.1949), *cert. denied*, 338 U.S. 911, 70 S.Ct. 349, 94 L.Ed. 561 (1950); *Smith v. Lykes Brothers—Ripley S.S. Co.*, 105 F.2d 604, 606 (5th Cir.), *cert. denied*, 308 U.S. 604, 60 S.Ct. 141, 84 L.Ed. 505 (1939). This court did not allow recovery for both maintenance and lost room and board.

Defendant's second argument is that the plaintiff is bound by the $8.00 per day maintenance and cure provision of the collective bargaining agreement between the defendants and the union of which plaintiff is a member. Defendants argue that because of the collective bargaining agreement, plaintiff's recovery for lost room and board is limited to his maintenance payments. Defendants argue that the monetary value of meals and lodging provided aboard the vessel is irrelevant in light of the designated maintenance allowance of $8.00 per day under the collective bargaining agreement.

In support of their argument, defendants cite the Ninth Circuit case of *Gardiner v. Sea–Land Service, Inc.*, 786 F.2d 943 (9th Cir.), *cert. denied*, 479 U.S. 924, 107 S.Ct. 331, 93 L.Ed.2d 303 (1986). In *Gardiner*, seven seamen belonging to maritime unions sued their employer-shipowners for the right to maintenance payments greater than the daily rate of $8.00 provided for in the collective bargaining agreements between the shipowners and the seamen's unions. The court held that the broad policies underlying labor laws required that the maintenance rate specified in the collective bargaining agreements be enforced. *Id.* at 948.

■ In relying on *Gardiner*, the defendants confuse plaintiff's right to maintenance and his right to recover for lost wages under the Jones Act and the doctrine of unseaworthiness. "Maintenance" is the duty of a shipowner to provide food and lodging to a seaman who becomes ill or injured while in the service of the ship. *Calmar S.S. Corp. v. Taylor*, 303 U.S. 525, 528, 58 S.Ct. 651, 653, 82 L.Ed. 993 (1938). The seaman is entitled to maintenance equivalent to that ordinarily furnished at sea. *Calmar S.S. Corp.*, 303 U.S. at 528, 58 S.Ct. at 653. The duty to provide maintenance is grounded in general maritime law and arises out of the contract between a seaman and the shipowner. *Cortes v. Baltimore Insular Line*, 287 U.S. 367, 371, 53 S.Ct. 173, 174, 77 L.Ed. 368 (1932). A seaman's right to maintenance is not dependent upon principles of negligence or unseaworthiness. While the right to maintenance cannot be abbrogated by contract, *See Cortes*, 287 U.S. at 371, 53 S.Ct. at 174, the *Gardiner* court held that where a collective bargaining agreement expressly

provides for a precise rate of maintenance, that rate must be enforced even if the court feels that it is inadequate. *Gardiner*, 786 F.2d at 949.

■ Damages for lost earnings awarded under the Jones Act or the doctrine of unseaworthiness are distinguishable from maintenance payments. Damages for negligence or for unseaworthiness are premised upon some wrong on the part of the employer or shipowner, and recovery is grounded on tort-related concepts of making the injured victim whole. Maintenance payments, on the other hand, arise out of the contractual relationship between the employer and the shipowner, and the entitlement to maintenance is not dependent upon any wrongdoing by the shipowner. *See Vickers v. Tumey*, 290 F.2d 426, 425 (5th Cir.1961); *Smith v. Lykes Brothers— Ripley S.S. Co.*, 105 F.2d 604, 606 (5th Cir.), ·*cert. denied*, 308 U.S. 604, 60 S.Ct. 141, 84 L.Ed. 505 (1939). The obligation to provide maintenance serves the goals of encouraging marine commerce and assuring the well-being of the seaman. *Aguilar v. Standard Oil Co.*, 318 U.S. 724, 727, 63 S.Ct. 930, 932, 87 L.Ed. 1107 (1943). Thus, while the maintenance and lost earnings may overlap in terms of the loss compensated, they are conceptually and legally distinct as theories of recovery.

■ Thus, while Ninth Circuit law allows recovery of maintenance to be limited to an amount specified in a collective bargaining agreement, there is no suggestion that this amount should also limit recovery for lost room and board as a component of lost wages. The quid pro quo alluded to by the *Gardiner* court which justifies limitation of the maintenance payments has not taken place with respect to the right of a seaman to fully recover for lost earnings in the event that the shipowner is negligent or the ship unseaworthy. Thus, the agreement to limit maintenance is an agreement which addresses a distinct obligation of the shipowner to provide for ill or injured seamen without regard to fault; this agreement cannot be construed as an agreement to also limit the shipowner's liability to fully compensate the plaintiff when the shipowner has been shown to be at fault. This conclusion is supported by *Collins v. State of Alaska*, 823 F.2d 329 (9th Cir. 1987), in which the Court of Appeals for the Ninth Circuit noted that "a serious question remains whether the *Gardiner* analysis may be extended to the contractual waiver of Jones Act rights." *Id.* at 330. Accordingly, the court rejects defendants' argument that plaintiff's recovery for lost room and board as a component of his lost wages is limited to the $8 per day provided for maintenance.

■ Defendants further argue that plaintiff is not entitled to recover for lost lodging costs because he maintains a residence. In support of this proposition, defendants cite one case, *Alexandervich v. Gallagher Brothers Sand and Gravel Corp.*, 298 F.2d 918 (2d Cir.1961). In that case the court did not allow payments to the plaintiff for lodging because plaintiff stayed at his home and thus did not incur any additional expenses as a result of the accident. *Id.* at 922. Defendants' argument on this point ignores the court's explicit finding that plaintiff was unable to live at his home in Mississippi during his recuperation. Thus, *Alexandervich* is inapposite because the plaintiff in this case did incur additional expense for lodging as the result of the accident, and therefore the lodging he lost aboard the vessel had pecuniary value to him.

Defendants' final argument is that if plaintiff is entitled to recover the costs of his food, he may only recover a portion of his actual food costs. Plaintiff testified that he had to go to restaurants for his meals during his period of recuperation. Thus, the loss of meals aboard the vessel caused plaintiff direct financial loss. The court found that the pecuniary value to plaintiff of the meals that he would have had aboard the vessel was $12 per day. This finding was based upon expert testimony by an economist who was qualified in the area of lost earnings. Defendant presents nothing to persuade this court that its finding was unreasonable or without adequate support. Thus, defendants'

argument for reconsideration on this point is without merit.

Upon considering all of defendants' arguments, the court finds that defendants have presented nothing to this court which would warrant limiting plaintiff's recovery to an amount less than the full value of the earnings to which he was entitled. Accordingly, defendants' motion for reconsideration is DENIED.

Defendants make an additional argument regarding prejudgment interest. Defendants' arguments, however, go to the amount of prejudgment interest to be awarded rather than to the court's finding that such interest would be awarded. Thus, defendants' arguments will be considered in the court's order awarding prejudgment interest.

IT IS SO ORDERED.

## ORDER AWARDING PREJUDGMENT INTEREST

This case was tried by the court without a jury and judgment was entered in favor of the plaintiffs. The court awarded plaintiff John Ward $175,000 in general damages and $19,542.41 in lost earnings. The court awarded Shirley Ward $20,000 for loss of consortium. The court held that prejudgment interest would be awarded in an amount to be determined by the court upon application by plaintiffs. Plaintiffs now move pursuant to this court's order for an award of prejudgment interest.

Plaintiffs argue that they are entitled to prejudgment interest in the amount of $25,127.91. Plaintiffs argue that the prejudgment interest should be calculated from the date of the injury at a rate of 9%.

Defendants argue that the past losses of John Ward is the only category of damages entitled to an assessment of prejudgment interest. Defendants argue that since the court's award of general damages encompasses future damages, the court cannot award prejudgment interest on the entire amount. Defendants also argue that prejudgment interest accrues from the date of the complaint and not from the date of the injury. Finally, defendants argue that the rate for prejudgment interest is determined as of the date of the judgment. The court will consider each of these arguments separately.

### A. *Portion of Damages Entitled to Prejudgment Interest*

The Court of Appeals for the Ninth Circuit has held that prejudgment interest is not precluded when damages are based upon an unliquidated sum. In the present case, this court awarded John Ward a single sum for general damages, including both past and future harm. The question arises whether the court can grant prejudgment interest on an award of general damages when that award contains an unspecified portion for future pain and suffering.

The Ninth Circuit has not directly addressed this issue, and other circuits differ in their treatment of this issue. For example, the Eleventh Circuit has held that when this type of lump sum award is handed down by a jury, prejudgment interest should not be awarded because the judge has no way of determining past and future damages. *Reichert v. Chemical Carriers, Inc.*, 794 F.2d 1557 (11th Cir.1986). The Fifth Circuit, on the other hand, has allowed prejudgment interest on a district court's entire damage award which was not divided into components for past and future losses. *Drachenberg v. Canal Barge Co.*, 621 F.2d 760 (5th Cir.1980). *See also McCormack v. Noble Drilling Corp.*, 608 F.2d 169 (5th Cir.1979). Where the award is already apportioned between past and future losses, however, the Fifth Circuit has held that prejudgment interest cannot be awarded on those damages attributed to future loss. *Williams v. Reading & Bates Drilling Co.*, 750 F.2d 487 (5th Cir.1985). Finally, the Seventh Circuit in *Hillier v. Southern Towing Co.*, 740 F.2d 583, 586 (7th Cir.1984), *cert. denied*, 469 U.S. 1190, 105 S.Ct. 961, 83 L.Ed.2d 966 (1985), reversed the trial court for refusing to award prejudgment interest on a jury award for pain and suffering and loss of society, even though the award for loss of society was not divided into separate components for past and future loss. In remanding the case the appellate court did not mandate an

award of prejudgment interest on the entire amount; however, it noted that several other courts have awarded prejudgment interest on the entire damages award without distinguishing between past and future losses. *Id.* at 585.

Under Ninth Circuit law, it is clear that the award of prejudgment interest in admiralty cases is within the discretion of the district court. *Vance v. American Hawaii Cruises, Inc.*, 789 F.2d 790, 794 (9th Cir. 1986); *Columbia Brick Works, Inc. v. Royal Ins. Co.*, 768 F.2d 1066, 1068 (9th Cir.1985). In certain circumstances, however, an award of prejudgment interest will constitute an abuse of discretion. The Court of Appeals for the Ninth Circuit has identified two circumstances in which it would be an abuse of discretion to award prejudgment interest. The first circumstance is where an award of prejudgment interest would duplicate an item of compensation already awarded, such as when losses are computed by a method that includes interest from the date of injury. The second circumstance is where the loss was not suffered prior to judgment but rather will accrue subsequent to judgment. *Columbia Brick Works, Inc. v. Royal Ins. Co.*, 768 F.2d 1066, 1068 (9th Cir.1985). These two rules barring an award of prejudgment interest are premised upon the principle that prejudgment interest must serve a compensatory and not a punitive function. *Id.*

■ In the present case, the court finds that the proper result is to award plaintiffs prejudgment interest on those damages suffered prior to judgment. To achieve this result the court must amend its award of general damages to John Ward to separate past from future harm. Amending the award in this manner will avoid the Ninth Circuit prohibition on awards of prejudgment interest for post-judgment harm. Furthermore, it will satisfy the policy of fully compensating plaintiffs for their loss. This result is supported by *Pickle v. International Oilfield Divers, Inc.*, 791 F.2d 1237 (5th Cir.1986), *cert. denied*, 479 U.S. 1059, 107 S.Ct. 939, 93 L.Ed.2d 989 (1987), in which the Fifth Circuit remanded a case

to the district court to determine how much of the general award for pain and suffering, entered after a bench trial, represented recovery for future harm.

Accordingly, this court finds that of the $175,000 awarded to John Ward for general damages, $125,000 of that amount was for past harm and $50,000 of that amount was for future harm. Since $50,000 represents the only component of the court's award for future harm, prejudgment interest will be awarded on the balance of the damages.

### B. *When Prejudgment Interest Begins to Accrue*

■ The purpose of awarding prejudgment interest is to compensate the plaintiffs for being deprived of the monetary value of their loss from the time of the loss to the time of judgment. *Turner v. Japan Lines, Ltd.*, 702 F.2d 752 (9th Cir.1983). In many cases, the loss occurs immediately, and thus, prejudgment interest is appropriate from the date of the injury. *See Columbia Brick Works, Inc.*, 768 F.2d at 1070. In the present case, however, the prejudgment loss began at the time of the accident but accrued over time until judgment. The court thus finds that the appropriate date from which prejudgment interest should accrue in order to fully compensate plaintiffs for their loss is the date of the complaint. Accordingly, prejudgment interest will be calculated from May 6, 1987 until June 21, 1988.

### C. *Rate of Interest*

■ The applicable rate of post-judgment interest for civil cases in the district court is the Treasury Bill rate. 28 U.S.C. § 1961. The Court of Appeals for the Ninth Circuit has held that this rate "is also appropriate for fixing the rate for prejudgment interest unless the equities of a particular case demand a different rate." *Columbia Brick Works, Inc.*, 768 F.2d at 1071.

Plaintiffs argue that prejudgment interest should be calculated at 9% which was the Treasury Bill rate on the date the motion for prejudgment interest was filed. In *Turner v. Japan Lines, Ltd.*, the Ninth

Circuit held that prejudgment interest should be awarded at the statutory rate applicable on the date of judgment. 702 F.2d at 758. In *Turner*, the applicable statutory state interest rate was amended postjudgment but prior to payment. *Id.* at 757. The plaintiff argued that the rate of prejudgment interest should increase to the new higher rate from the date of the amendment until payment. The court disagreed, applying the rate of interest in effect on the date of judgment. *Id.* at 757–758. This court follows *Turner* and concludes that the applicable rate of prejudgment interest is 7.59%, the Treasury Bill rate on the date of judgment. The court finds that this rate of interest will adequately compensate plaintiffs for their loss, and thus, the equities of the situation do not require a different rate.

### D. *Conclusion*

The court finds that plaintiffs are entitled to prejudgment interest on all past losses. The court hereby amends its award of general damages to John Ward to specify that $125,000 of that award is for past harm and that $50,000 of that award is for future harm. Thus, the court awards prejudgment interest in favor of plaintiffs in the following amounts: $125,000 in past general damages for John Ward; $19,-542.41 for past lost earnings for John Ward; and $20,000 in loss of consortium for Shirley Ward. Interest shall be calculated at a rate of 7.59% from May 6, 1987, until June 21, 1988. Plaintiffs are directed to prepare the final judgment to include the award of prejudgment interest calculated in accordance with the decision herein.

IT IS SO ORDERED.