## THE MICHAEL TRACY.

### HENNESSY v. M. & J. TRACY, Inc.

(Circuit Court of Appeals, Fourth Circuit. February 5, 1924.)

No. 2156.

Seamen ⬤�longdash11—Duty of ship to furnish maintenance and cure held to extend to injury received after discharge, but before seaman left the ship.

The obligation of a ship to furnish maintenance and cure to an injured seaman *held* to extend to an injury received by a seaman after he was paid off and formally discharged on board, but before in ordinary course he had left the ship.

Appeal from the District Court of the United States for the Eastern District of Virginia, at Norfolk; D. Lawrence Groner, Judge.

Suit in admiralty by Thomas Hennessey against M. & J. Tracy, Incorporated, as owner of the steamer Michael Tracy. Decree for respondent, and libelant appeals. Reversed.

Jacob Louis Morewitz, of Newport News, Va., for appellant.

Foley & Martin, of New York City, Oast, Kelsey & Jett, of Norfolk, Va., William J. Martin, of New York City, and George V. A. McCloskey, of New York City, for appellee.

Before WOODS, WADDILL, and ROSE, Circuit Judges.

ROSE, Circuit Judge. The appellant here, libelant below, was or had been a fireman on the steamship Michael Tracy. On the 28th of September, 1922, the vessel had completed its voyage; the libelant had asked for his pay and discharge. He had received both and had signed off. He went down to his quarters to get his belongings, and came up on deck with them. At that time one of the officers of the ship, assisted by several seamen, was engaged in rigging up the ship's accommodation ladder, so that people might easily and safely pass between it and the pier. There was at the time another ladder up the ship's side from the wharf. It had been placed there by some shore workmen, who had been employed to do some scaling on the ship. It was not secure, and, when they used it, it had been held in place by some of them. To make it safe, its upper end should have been lashed to the ship's rail. The libelant, without paying any attention to its insecure condition, started to go down it. It slipped with him; he fell to the wharf and broke his arm. He was sent to the Marine Hospital, where he stayed eight days, and was then discharged at his own request; but he wore a plaster cast for five weeks longer, and he says that he was not able to do any work before some time in the succeeding January.

In his libel, he claimed full compensation, upon the theory that his discharge had severed all his relations with the ship, except those resulting from his being rightfully on board of her, and in consequence entitled to assume that no traps should be put or left in his path. We are at one with the learned judge below in acquitting the ship and its

company of negligence. They had nothing to do with the ladder which fell; they did not put it up or cause others to raise it; they had not invited any one to use it. At the very moment at which the accident happened, they were busy in rigging up another and entirely safe way of getting off the ship. It was broad daylight. There were no women, children, or feeble persons on board. The insecure condition of the ladder upon which libelant was hurt was open to his eyes. No one could reasonably anticipate that he or any one else on board would seek to use it. Even so, libelant says he is entitled to wages, maintenance, and cure, because he asserts he had not been discharged before a shipping commissioner.

Respondent is, of course, right in saying as a matter of fact libelant, in setting up such a claim, has completely shifted the position he took in his libel, and, as a matter of law, we agree with it that, as the ship was engaged in the Atlantic coast trade among ports of this country, it was not necessary that he should be discharged before a commissioner, unless he had shipped before one, as he had not. Nevertheless, we think, the obligation of the ship to furnish maintenance and cure attaches to accidents which happen in the brief interval between the time a seaman is paid off and formally discharged and the subsequent time at which, in ordinary course, he actually gets physically away from her. He went on her as a seaman, and for the purpose in hand he did not cease to be one until he was safely off her. What allowance should be made for maintenance and cure, and in some cases for wages, must all depend upon the facts of each particular case. The Bouker No. 2, 241 Fed. 831, 154 C. C. A. 533. Medical and surgical treatment cost the instant libelant nothing. He could, if he would, have remained in the Marine Hospital much longer than he did, and during that time he would have been free of expense. His wages were at the rate of $57.50 per month. If he be allowed for maintenance their equivalent for three months, which is about the time which elapsed from his leaving the hospital to his again going to sea, substantial justice will be done, so far as the existing rules of law permit.

From what has been said, it follows that the decree below must be reversed, and the case sent back to the District Court, with directions to enter a decree in favor of the libelant for $172.50, with costs.

Reversed.