Randall Scott KENNING, Appellant,

v.

BLUDCO BARGE & TOWING CO. and
Central American Barge and
Towing Co., Appellees.

No. 01–92–01086–CV.

Court of Appeals of Texas,
Houston (1st Dist.).

Dec. 15, 1994.

Rehearing Overruled Jan. 5, 1995.

David A. Slaughter, Ronald D. Krist, Houston, for appellant.

Ann E. Webb, Houston, for appellees.

Before DUGGAN, O'CONNOR and HEDGES, JJ.

## OPINION

DUGGAN, Justice.

This is an appeal from a take-nothing summary judgment in a suit brought under the Jones Act,[1] the Longshore and Harbor Workers' Compensation Act (LHWCA),[2] and general maritime law. Appellant, Randall Kenning, sued his former employer, appellee Bludco Barge and Towing Company (Blud-

---

1. 46 U.S.C. § 688 (1988).

2. 33 U.S.C. §§ 901–50 (1988).

co), and a barge towing company, appellee Central American Barge & Towing Company (Central American), alleging unseaworthiness and negligence that resulted in personal injury to himself from exposure to a toxic chemical while he was aboard a barge repairing a cargo seal.

In three points of error, Kenning asserts the trial court erred in granting summary judgment in favor of appellees. At oral argument, Kenning waived his third point of error, his assertion that the trial court erred in refusing his request for relief under the LHWCA because of appellees' negligence. We overrule points of error one and two, and affirm the trial court's judgment.

Appellee Bludco employed Kenning as port engineer, ocean-going engineer, and chief engineer between July 19, 1989 and September 21, 1989. In September 1989, Kenning specifically requested to be reassigned to a shore-based position. Accordingly, Bludco granted his request and employed him as a shop and shore-side mechanic from September 22, 1989 until March 15, 1990. As a shop mechanic, Kenning performed the vast majority of his work on shore in the mechanic shop. During the six-month period between September 22, 1989 and March 15, 1990, the only work Kenning performed on a vessel underway was the repair work on the POINCIANA.

■ The POINCIANA is an ocean-going barge, owned by appellee Central American. Bludco exclusively operated the POINCIANA pursuant to a bareboat charter agreement with Central American.[3] Under the agreement, Bludco assumed all responsibility for the POINCIANA, including personnel, maintenance, and repairs.

In January and February 1990, the POINCIANA was engaged in transporting cargos between Mexican and United States ports in the Gulf of Mexico. On January 30, 1990, the POINCIANA arrived in port at Tampico,

Mexico to discharge a cargo of the chemical, vinyl chloride monomer (VCM). On January 31, 1990, the forward cargo pump seal sprung a leak, severely hampering unloading operations. At that time, Kenning was neither a member of the crew nor aboard the POINCIANA.

On February 2, 1990, Bludco sent Kenning from Houston to the POINCIANA to repair the faulty seal. After evaluating the faulty seal and taking measurements aboard the vessel in the harbor, Kenning left the vessel after spending less than 12 hours on board in port. Kenning flew back to Houston to fabricate a replacement seal in the mechanic shop. On February 5, 1990, while Kenning was still in Houston, the POINCIANA was moved offshore by order of the port authorities. On February 7, 1990, Kenning returned to Tampico, was taken out to the POINCIANA, and spent less than four hours aboard the vessel attempting to install the replacement seal. The replacement seal did not stop the leak, so Kenning took the seal ashore to a machine shop in Tampico for corrections. He returned to the vessel on February 8, 1990, and completed the repairs in less than three hours; the vessel was then returned to port. Kenning flew back to Houston the next day. In all, Kenning spent less than 19 hours on board the POINCIANA during his three repair visits; the vessel was in port during Kenning's entire first visit.

Kenning alleges that while making the repairs, he was exposed to the chemical, VCM, and sustained injuries as a result of that exposure. Kenning originally filed suit against Bludco and Central American under the Jones Act and general maritime law, alleging unseaworthiness. He later amended his petition to add a negligence claim under the LHWCA.

Bludco and Central American filed a motion for summary judgment, asserting three grounds: (1) Kenning was not a Jones Act

3. A bareboat charter is one in which the owner of the vessel transfers full possession and control of the vessel to the charterer for the period of the contract. *Tenneco, Inc. v. Loomis Internat'l, Inc.*, 730 S.W.2d 96, 97 (Tex.App.—Houston [14th Dist.] 1987, no writ); *Cary Marine, Inc. v. Motorvessel Papillon*, 872 F.2d 751, 752 n. 1 (6th Cir.1989). "If a vessel is chartered bareboat, the owner may escape liability in personam for the condition or management of the vessel at least in some circumstances." *Admiral Towing & Barge, Co. v. Seatran Internat'l, S.A.*, 767 F.2d 243, 248 (5th Cir.1985).

seaman at the time of his alleged injuries because he failed to satisfy the first prong of the seaman status test: he was neither permanently attached to a vessel nor performing a substantial part of his work aboard a vessel; (2) Kenning was not entitled to the warranty of a seaworthy vessel under general maritime law because he went on board the vessel for the sole purpose of repairing a known condition; and (3) Kenning did not have a remedy under the LHWCA because his alleged injuries did not occur upon navigable waters of the United States. The trial court granted summary judgment in favor of Bludco and Central American.

 The Jones Act, 46 U.S.C. § 688 (1988), and the LHWCA, 33 U.S.C. §§ 901–50 (1988), are federal statutes protecting classes of individuals under traditional maritime law. *Texaco Ref. & Mktg., Inc. v. Estate of Dau Van Tran,* 808 S.W.2d 61, 63 (Tex.), *cert. denied,* 502 U.S. 908, 112 S.Ct. 301, 116 L.Ed.2d 245 (1991). Federal maritime law governs this action. *See Liaw Su Teng v. Skaarup Shipping Corp.,* 743 F.2d 1140, 1145 (5th Cir.1984) (holding that federal courts should entertain maritime matters involving suits by crew members against employers or the vessels aboard which crew members are employed). The "saving to suitors" clause of 28 U.S.C. § 1333(1) (1988) permits state courts to adjudicate maritime actions; the only constraint is that state courts must comply with the "reverse-Erie" doctrine and apply federal maritime substantive remedies. *Texaco Ref. & Mktg., Inc.,* 808 S.W.2d at 64 (citing *Offshore Logistics, Inc. v. Tallentire,* 477 U.S. 207, 222–23, 106 S.Ct. 2485, 2494, 91 L.Ed.2d 174 (1986)). Because summary judgment proceedings are procedural in nature, we apply the state standard for appellate review of summary judgment orders.

 The standard for appellate review of a summary judgment in favor of a defendant is whether the summary judgment proof establishes, as a matter of law, that there is no genuine issue of fact as to one or more of the essential elements of the plaintiff's cause of action. *Gibbs v. General Motors Corp.,* 450 S.W.2d 827, 828 (Tex.1970). The movant has the burden to show that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Nixon v. Mr. Property Mgmt. Co.,* 690 S.W.2d 546, 548 (Tex.1985). Evidence favorable to the nonmovant will be taken as true in deciding whether there is a disputed material fact issue that precludes summary judgment. *Id.* Every reasonable inference must be indulged in favor of the nonmovant and any doubts resolved in its favor. *Montgomery v. Kennedy,* 669 S.W.2d 309, 311 (Tex. 1984). A summary judgment for the defendant, disposing of the entire case, is proper only if, as a matter of law, the plaintiff could not succeed upon any theories pleaded. *Delgado v. Burns,* 656 S.W.2d 428, 429 (Tex. 1983). Once the defendant produces sufficient evidence to establish the right to a summary judgment, the plaintiff must set forth sufficient evidence to give rise to a fact issue to avoid a summary judgment. *"Moore" Burger, Inc. v. Phillips Petroleum Co.,* 492 S.W.2d 934, 936–37 (Tex.1972).

 In his first point of error, Kenning contends the trial court erred in granting summary judgment on the basis that he was not a Jones Act seaman. Whether an individual is a Jones Act seaman is a mixed question of law and fact. *McDermott Int'l, Inc. v. Wilander,* 498 U.S. 337, 356, 111 S.Ct. 807, 817, 112 L.Ed.2d 866 (1991). However, summary judgment on seaman status is appropriate as a matter of law where there is no factual dispute. *Williams v. Weber Mgmt. Servs.,* 839 F.2d 1039, 1040 (5th Cir. 1987) (affirming trial court's summary judgment ruling against seaman status).

 "Seaman" is a statutory term; its interpretation is a question of law. *Wilander,* 498 U.S. at 356, 111 S.Ct. at 817. The Fifth Circuit established the test for Jones Act seaman status in *Offshore Co. v. Robison,* 266 F.2d 769, 779 (5th Cir.1959). *See also Barrett v. Chevron U.S.A.,* 781 F.2d 1067, 1074 (5th Cir.1986) (en banc) (reaffirming the test). The *Robison* test has two prongs, both of which must be satisfied. First, the individual must be permanently assigned to a vessel or fleet of vessels *or* perform a substantial part of his work on the vessel. *Robison,* 266 F.2d at 779. Second, the individual

must contribute to the function of the vessel or accomplishment of its mission. *Id.* To qualify as a Jones Act seaman, Kenning must show he satisfies both prongs of the *Robison* test.

To satisfy the first prong, Kenning must show that, at the time of his alleged injuries, he was permanently assigned to a vessel or fleet of vessels *or* performed a substantial part of his work on the vessel. Kenning worked as a shore-based mechanic, performing the vast majority of his work on shore in the mechanic shop. Shore-based personnel, injured while temporarily aboard a vessel, must have more than just a transitory connection with the vessel to qualify as Jones Act seamen. *Hebert v. Air Logistics, Inc.,* 720 F.2d 853, 856 (5th Cir.1983). Bludco assigned Kenning to the POINCIANA for the sole purpose of repairing the cargo pump seal. This repair assignment took less than 19 hours and was temporary in nature, not permanent.

Even though Kenning was not permanently connected or assigned to the POINCIANA, he could still satisfy the first prong of the *Robison* test if he could show that he performed a "substantial portion" of his work on the vessel. In *Barrett,* the court addressed the substantial portion issue, taking into consideration all of the circumstances of employment. 781 F.2d at 1075. If the employee's regularly assigned duties required him to divide his time between vessel and land, his status as a crew member is determined in the context of his entire employment with his current employer. *Id.* Courts find the percentage of time worked on land versus that worked at sea to be dispositive on the substantial portion issue. *Pizzitolo v. Electro–Coal Transfer Corp.,* 812 F.2d 977, 979, 983 (5th Cir.1987), *cert. denied,* 484 U.S. 1059, 108 S.Ct. 1013, 98 L.Ed.2d 978 (1988) (performing 25 percent of work on docked vessels is insufficient to qualify employee as a Jones Act seaman); *Palmer v. Fayard Moving & Transp. Corp.,* 930 F.2d 437, 439 (5th Cir.1991) (performing 19 percent of work at sea is insufficient to qualify employee as a Jones Act seaman as a matter of law); *Barrett,* 781 F.2d at 1076 (performing 30 percent of work aboard vessels is insufficient to qualify employee as a Jones Act seaman); *Bouvier v. Krenz,* 702 F.2d 89, 91 (5th Cir.1983) (performing 50 percent of time working aboard ships is insufficient to qualify employee as a Jones Act seaman as a matter of law).

Kenning worked his shore-based assignment for six months, or approximately 120 working days. Of those 120 days, Kenning worked on board the POINCIANA for less than 19 hours, on three separate days. Thus, Kenning's expenditure of less than 2.5 percent of his entire working time on board the vessel is insufficient as a matter of law to qualify as a "substantial part" of his work. *Palmer,* 930 F.2d at 439. The trial court correctly concluded that Kenning failed the first prong of the *Robison* test as he was not permanently assigned to a vessel, and he did not perform a substantial part of his working time aboard a vessel.

Finally, concerning Kenning's seaman status, he alleges that he underwent a change from shore engineer to Jones Act seaman status as chief engineer while in Tampico. In his response to Bludco's motion for summary judgment, he alleges he "*was to* be" the chief engineer aboard the vessel and return with the vessel to Houston but was "unable to do so because of his injuries as a result of exposure to VCM...." (Emphasis added.) In his deposition, Kenning testified that "*[a]fter the repairs were completed,* ... I was assigned as chief engineer by Richard (Bludworth) Jr. [Bludco's operations manager] to sail back to the United States ... but I refused to do it." (Emphasis added.) Kenning's own evidence thus shows that he was injured while he was repairing the cargo seal, that his claimed change in status came *after* the injuries he sustained while making the repairs, and that he was not a Jones Act seaman at the time of his alleged injuries.

The *Robison* two-part test is conjunctive. *Golden v. Rowan Cos.,* 778 F.2d 1022, 1026 (5th Cir.1985). Because Kenning failed the first prong of the conjunctive test, we need not consider his argument under the second prong that his work contributed to the mission of the vessel. *See id.* Kenning there-

fore loses his claim for seaman status under the Jones Act.

We overrule Kenning's first point of error.

In his second point of error, Kenning asserts the trial court erred in granting summary judgment against him on his cause of action for unseaworthiness of the POINCIANA under general maritime law. He argues that Bludco owed him the duty to provide a seaworthy vessel and competent crew, but that the vessel was unseaworthy and was incompetently crewed.

The warranty of seaworthiness does not extend to a repairman with respect to the unseaworthy condition he has been employed to correct. *Grigsby v. Coastal Marine Serv.*, 412 F.2d 1011, 1030 (5th Cir.1969). Kenning specifically went on board the POINCIANA for the sole purpose of repairing the faulty cargo pump seal, knowing at the time the cargo consisted of the chemical, VCM. Kenning cannot recover for his alleged injuries under a warranty for seaworthiness because he was assigned to repair a known hazardous condition—a condition that caused his alleged injuries. *See Spinks v. Chevron Oil Co.*, 507 F.2d 216, 226–27 (5th Cir.1975), *modified*, 546 F.2d 675 (5th Cir. 1977). In these circumstances, the warranty of seaworthiness did not extend to Kenning.

As to the vessel being incompetently crewed, and hence unseaworthy, Kenning argues on appeal that the leak in the seal occurred because "the [initially replaced] valve was forced to fail by one of the crew members, Chief Engineer Sewell," and that the forcing of the valve constituted negligence. Whatever the source or cause of the leaking seal, Kenning was brought aboard for the specific purpose of repairing that condition, and he could not base a claim of unseaworthiness on that condition. *Grigsby*, 412 F.2d at 1030. The trial court therefore correctly dismissed Kenning's unseaworthiness claim as a matter of law.

We overrule Kenning's second point of error.

We affirm the trial court's judgment.