**Opinion issued July 14, 2016**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-15-00504-CV

————————————

**INOCENTE CEPEDA, Appellant**

**V.**

**ORION MARINE CONSTRUCTION, INC., Appellee**

---

**On Appeal from the 190th District Court
Harris County, Texas
Trial Court Case No. 2012-24614**

---

## O P I N I O N

Inocente Cepeda sued Orion Marine Construction, Inc., alleging that he was injured aboard a skiff transporting him from a dredge in the Houston Ship Channel to dry land. Cepeda pleaded claims for negligence under the Jones Act as well as maintenance and cure, unseaworthiness, and negligence under the general maritime

law of the United States. The trial court rendered a partial summary judgment against Cepeda on all of his claims but the one for negligence under general maritime law on the basis that he was not a seaman at the time of the accident as a matter of law and therefore could not recover for negligence under the Jones Act or for maintenance and cure or unseaworthiness. We reverse and remand.

## BACKGROUND

In April 2012, Cepeda captained one of Orion Marine's dredges. On April 4, when Cepeda's dredge was operating in the Houston Ship Channel, Cepeda's supervisor, Jorge Cordova, came aboard and fired Cepeda from his position as captain. Cepeda disputes that his termination was effective immediately, and maintains that Cordova told him he was eligible for another position on the vessel. But it is undisputed that Cepeda then gathered his personal belongings and on Cordova's order boarded a skiff, which Cordova piloted to a Baytown landing. Cepeda claims that he was injured en route, when the skiff struck a log floating in the water. Cordova denied that any accident took place.

Orion Marine moved for partial summary judgment on Cepeda's Jones Act claim and his claims for maintenance and cure and unseaworthiness, contending that Orion Marine's termination of Cepeda's employment before the accident foreclosed him from being a seaman as a matter of law, and seaman status is an element of these causes of action. The trial court rendered a partial summary judgment disposing of

Cepeda's claims for negligence under the Jones Act and for maintenance and cure and unseaworthiness under general maritime law.

Cepeda proceeded to trial on his negligence claim under general maritime law; the jury rendered a defense verdict. The trial court entered a take-nothing final judgment on the jury's verdict.

## DISCUSSION

On appeal, Cepeda contends that the trial court erred in concluding that he was not a seaman as a matter of law. Orion Marine maintains that Cepeda was not a seaman at the time of the accident because it had terminated his employment on the dredge, before Cepeda and Cordova boarded the skiff, and thus no employer-employee relationship existed at the time that Cepeda claims that he was injured.

### A. Standard of Review

When a state court presides over an admiralty case, it "essentially occupies the same position occupied by a federal court sitting in diversity: the state court must apply federal maritime law but follow state procedure." *Mar. Overseas Corp. v. Ellis*, 971 S.W.2d 402, 406 (Tex. 1998). Thus, we review the trial court's partial summary judgment and its legal conclusions de novo. *City of Austin v. Whittington*, 384 S.W.3d 766, 788 (Tex. 2012); *Buck v. Palmer*, 381 S.W.3d 525, 527 (Tex. 2012).

## B. Applicable Law

To recover for negligence under the Jones Act or for maintenance and cure or unseaworthiness under general maritime law, one must be a "seaman." 46 U.S.C. § 30104; *McDermott Int'l, Inc. v. Wilander*, 498 U.S. 337, 341–43 (1991). "Seaman" is a term of art under general maritime law that Congress later incorporated into the Jones Act. *Stewart v. Dutra Constr. Co.*, 543 U.S. 481, 487–88 (2005). Whether a person qualifies as a seaman under the proper legal standard is a question of fact for the jury, unless reasonable minds could not differ. *Wilander*, 498 U.S. at 356; *see also Kenning v. Bludco Barge & Towing Co.*, 892 S.W.2d 164, 167 (Tex. App.—Houston [1st Dist.] 1994, writ denied) (holding that summary judgment on seaman status is proper when there is no factual dispute).

## C. Analysis

In *The Michael Tracy*, 295 F. 680 (4th Cir. 1924), the court of appeals addressed a scenario similar to the present one. In that case, the plaintiff had been paid and discharged. *Id.* at 680. After retrieving his belongings, he attempted to disembark from the ship via an unsecured ladder and fell and broke his arm. *Id.* In ruling that the plaintiff was entitled to maintenance and cure despite his discharge, the Fourth Circuit held that "the obligation of the ship to furnish maintenance and cure attaches to accidents which happen in the brief interval between the time a seaman is paid off and formally discharged and the subsequent time at which, in

4

ordinary course, he actually gets physically away from her." *Id.* at 681. The court concluded that the plaintiff "went on her as a seaman, and for the purpose in hand did not cease to be one until he was safely off her." *Id.*

The United States Supreme Court subsequently endorsed the Fourth Circuit's decision in *Aguilar v. Standard Oil Co. of N.J.*, 318 U.S. 724 (1943). In *Aguilar*, the Court addressed whether shipowners owed maintenance and cure to seamen injured during land travel to and from the ship while on shore leave. *Id.* at 726. Citing *The Michael Tracy*, the Court held that they did, reasoning that seamen departing or returning from shore leave were as entitled to maintenance and cure as a "seaman quitting the ship on being discharged." *Id.* at 736. The Court saw "no significant difference" between injuries sustained while going to and from the ship and those suffered while "quitting the ship." *Id.* at 737. In *Aguilar*, the Court was called on to decide something other than a seaman's post-discharge recovery rights. But the rationale for the Court's decision rests in part on the discharge rule articulated in *The Michael Tracy*. *See id.* at 736–37. We therefore regard this language in *Aguilar*, made deliberately and after mature consideration, to be persuasive, if not authoritative. *See Elledge v. Friberg-Cooper Water Supply Corp.*, 240 S.W.3d 869, 870 (Tex. 2007).

Subsequent decisions reinforce our view that *Aguilar* endorsed *The Michael Tracy* without reservation. Since *Aguilar*, both the Supreme Court and the lower

federal courts have repeated the rule that a seaman's remedies persist after discharge during the interval in which he disembarks the ship and safely returns to dry land. *See Braen v. Pfeifer Oil Transp. Co.*, 361 U.S. 129, 132 (1959) (under Jones Act "a seaman is as much in the service of his ship when boarding it on first reporting for duty, quitting it on being discharged, or going to and from the ship while on shore leave, as he is while on board at high sea"); *Vincent v. Harvey Well Serv.*, 441 F.2d 146, 148 (5th Cir. 1971) (same); *Ausborn v. Scott Chotin, Inc.*, 697 F. Supp. 251, 252 (E.D. La. 1988) (same); *Dangovich v. Isthmian Lines, Inc.*, 218 F. Supp. 235, 236 (S.D.N.Y. 1963) (same).

If there was doubt about the scope or continuing vitality of *The Michael Tracy*'s discharge rule, the First Circuit eliminated it in *LeBlanc v. B.G.T. Corp.*, 992 F.2d 394 (1st Cir. 1993). In *LeBlanc*, the plaintiff, an engineer aboard a commercial fishing vessel, was fired while at sea. *Id.* at 395–96. Once the ship docked, he was ordered to remove his belongings. *Id.* at 396. Shortly afterward, the plaintiff slipped and broke his foot in the engine room. *Id.* The trial court held that he was not entitled to maintenance and cure as a matter of law, because "that remedy cannot attach after termination of employment." *Id.* The First Circuit reversed, concluding that *The Michael Tracy*'s "statement of the law continues to shine brightly, undimmed by time." *Id.* at 400. Thus, it held that a fired seaman remains entitled to maintenance and cure "after termination of employment so long as the

6

triggering event takes place within the period of time reasonably needed for the accomplishment of tasks in general furtherance of winding up the seaman's employment—the prototypical examples being removing one's belongings, quitting the ship, or implementing direct orders given at the time of discharge." *Id.*

We conclude that *The Michael Tracy*'s discharge rule—endorsed by the Supreme Court in *Aguilar*, restated with approval by the Court in *Braen* and in other federal decisions, and reaffirmed in *LeBlanc*—is blackletter maritime law.[1] *See* THOMAS J. SCHOENBAUM, ADMIRALTY & MARITIME LAW § 4–30 n.1 (5th ed. 2012) (citing *LeBlanc* for rule that "the right to maintenance and cure remains even after the seaman's employment is terminated" in some circumstances); 2 MARTIN J. NORRIS, THE LAW OF SEAMEN § 26:31 (4th ed. 1985 & Supp. 2002) (reporting the holdings of *The Michael Tracy* and *LeBlanc* as the law).

Orion Marine nevertheless contends that subsequent Supreme Court decisions—*Chandris, Inc. v. Latsis*, 515 U.S. 347 (1995), in particular—forecloses seaman status to discharged employees like Cepeda. In *Chandris*, an engineer developed an eye injury on the day he left port aboard one of his employer's ships. *Id.* at 350. His job was based out of an office on dry land, but his responsibilities

---

[1] We are aware of a single modern decision to the contrary—*Fisher v. Cleveland Cliffs Iron Co.*, 1975 A.M.C. 1570 (W.D. Pa. 1975). In the 40-plus years since it was decided, *Fisher* has been cited once, by *LeBlanc*, which concluded the decision was unsupported by the weight of authority. 992 F.2d at 400 n.6.

required him to spend a certain amount of time at sea, aboard ships in his employer's fleet. *Id.* at 350. In this context, the Court concluded that a two-part test governs seaman status: (1) the employee's duties must contribute to the function of the ship or the accomplishment of its mission; and (2) the employee must have a connection to the ship in navigation, or an identifiable group of ships, that is substantial in both its duration and its nature. *Id.* at 368.

Orion Marine reasons that because an employment relationship between the seaman and the shipowner is intrinsic to the test articulated in *Chandris*, Orion Marine's termination of Cepeda precluded him from being a seaman at the time of the alleged accident. But *Chandris* addressed whether an employee ever enjoyed the status of seaman, not whether or when an acknowledged seaman lost that status after being fired at sea before he reached the shore. *See id.* at 350–51. In discussing the second element of the test for seaman status, the Court observed that changes in an employee's work assignments can alter status as a seaman. *Id.* at 372. It did so, however, for the purpose of advising that these changes could result in an employee gaining or losing seaman status. *Id.* The Court did not revisit, let alone disavow, the rule for discharged employees stated in *The Michael Tracy*, endorsed by the Court in *Aguilar*, and applied in *LeBlanc*.

We have no quarrel with the proposition that the right to recover under the Jones Act or for maintenance and cure or unseaworthiness arises from an employer-

8

employee relationship between seamen and shipowners. Federal maritime law makes it clear that this is so. *See Chandris*, 515 U.S. at 364–69. But it has long been the rule that a discharged seaman may recover as a seaman if injured in the process of quitting the ship. *The Michael Tracy*, 295 F. at 681. In this case, Orion Marine fired Cepeda from his position as captain while at sea and paid him at least through the end of the next day. It is undisputed that the only work that Cepeda performed at the time was as a seaman. If a seaman is terminated while he is at sea, then he remains a seaman for purposes of the Jones Act, maintenance and cure, and unseaworthiness claims until he returns to dry land. *See id.*; *LeBlanc*, 992 F.2d at 399–400. We hold that the trial court erred in granting partial summary judgment against Cepeda, based on its determination that Cepeda lacked status as a seaman.

Orion Marine does not dispute Cepeda's contention that the error was harmful. A different causation standard applies to the negligence claim under general maritime law that was tried to a jury than the causation standards that apply to Cepeda's causes of action for negligence under the Jones Act and for maintenance and cure. *See Noble Drilling (US) Inc. v. Fountain*, 238 S.W.3d 432, 440 (Tex. App.—Houston [1st Dist.] 2007, pet. denied) (a featherweight causation standard is applied under the Jones Act); *Marine Transp. Corp. v. Methodist Hosp.*, 221 S.W.3d 138, 147 (Tex. App.—Houston [1st Dist.] 2006, no pet.) (shipowners are liable for maintenance and cure regardless of whether they are at fault). The trial court

submitted a traditional common law proximate cause instruction. Because Cepeda's negligence cause of action under the Jones Act and his cause of action for maintenance and cure are not subject to proximate cause, we cannot conclude that the error in granting partial summary judgment was later rendered harmless by the jury's verdict. *See Dutton v. S. Pac. Transp.*, 576 S.W.2d 782, 786 (Tex. 1978) (holding that error in substituting proximate cause for statutory causation requirement was harmful error).

Cepeda's unseaworthiness claim likewise is not foreclosed by the jury's adverse verdict. To recover for unseaworthiness, Cepeda must prove that the unseaworthy condition of the vessel proximately caused his injuries. *Offshore Pipelines, Inc. v. Schooley*, 984 S.W.2d 654, 658 (Tex. App.—Houston [1st Dist.] 1998, no pet.). But an unseaworthiness claim is not a negligence claim. *See id.* ("Because the defendant's duty to provide a seaworthy vessel is completely independent of its duty to exercise reasonable care, the plaintiff does not have to prove the defendant was negligent."). Here, the trial court only submitted a general-maritime negligence claim to the jury and the jury's consideration of proximate cause therefore was limited to Orion Marine's performance of its duty of reasonable care. The jury did not consider whether any condition of the skiff in which Cepeda traveled proximately caused his injuries. Accordingly, we cannot conclude that the

error in granting summary judgment on Cepeda's unseaworthiness claim was later rendered harmless by the jury's negligence verdict either.

In light of our disposition, we need not reach Cepeda's second issue, challenging the trial court's rulings excluding evidence in which Cepeda disputed that he was fired while aboard ship before the accident.

## CONCLUSION

We reverse the trial court's partial summary judgment and remand this case for further proceedings consistent with this opinion. The remainder of the final judgment is unaffected by this opinion.


Jane Bland
Justice

Panel consists of Justices Higley, Bland, and Massengale.