AMERICAN PRESIDENT LINES, LTD.,
a corporation, Appellant and
Cross-Appellee,

v.

E. B. WELCH, Appellee and
Cross-Appellant.

No. 21016.

United States Court of Appeals
Ninth Circuit.

April 21, 1967.

Rehearings Denied May 26, 1967.

Graydon S. Staring, Frederick W. Wentker, Jr., Lillick, Geary, Wheat, Adams & Charles, San Francisco, Cal., for appellant.

Martin J. Jarvis, Eugene A. Brodsky, Jarvis, Miller & Stender, San Francisco, Cal., for appellee.

Before HAMLEY, HAMLIN and DUNIWAY, Circuit Judges.

HAMLIN, Circuit Judge:

E. B. Welch, appellee herein, filed an action in the United States District Court for the Northern District of California, Southern Division, against American President Lines, Ltd., appellant herein,

seeking damages for injuries received while he was a seaman aboard the SS PRESIDENT ROOSEVELT, a vessel owned by appellant. Appellee alleged that his injuries were proximately caused by the unseaworthiness of appellant's vessel in that appellant did not supply appellee "sufficient personnel or assistance necessary for the performance of his said duties aboard said vessel." The district court, without a jury, found for appellee holding that his damages amounted to $38,450, and that his own negligence contributed 50 per cent to the accident. Judgment was entered against appellant in the sum of $19,225.00. Appellant appeals from the finding of unseaworthiness, and appellee cross-appeals from the finding of contributory negligence.

Appellee is a merchant seaman holding a third assistant engineer's license for diesel vessels and a chief engineer's license for steam vessels. From April, 1962, to the latter part of February, 1964, he was employed as a third assistant engineer aboard the SS PRESIDENT ROOSEVELT.

On February 18, 1964, while the vessel was enroute from San Francisco to Los Angeles, it was discovered that the standby lube oil pump in the lower engine room was not operating properly. This pump cuts in service if the main lube oil pump fails and must function properly before the ship can safely proceed to sea. On the morning of February 19, 1964, when the vessel was in Los Angeles Harbor, the first assistant engineer, appellee's superior officer, instructed appellee to dismantle the pump and make the necessary repairs. Repairing the pump required removing its two pistons and crosshead and carrying them from the lower engine room to the ship's machine shop. Each part would have to be carried from the lower engine room up a ladder of approximately ten steps, over a six or eight-inch coaming, then along approximately 25 feet past a storekeeper's door, then up three or four steps and over another coaming six or eight inches high, and then approximately ten feet more into the machine shop. The testimony was that the

operation of dismantling the pump and carrying each piston and the crosshead to the machine shop is a two-man job. There was no contrary testimony upon this issue. Each piston weighs in excess of a hundred pounds. There was testimony estimating the weight of the crosshead at over a hundred pounds, but during the trial appellant produced evidence showing that it weighed forty-two pounds.

During the morning work in dismantling the pump an oiler was assigned to assist appellee. However, at noon his watch was finished and he left the job. When the oiler left, the pistons and the crosshead had been removed from the pump but were still in the lower engine room. After lunch appellee returned to the work alone. He first carried one piston from the lower engine room to the machine shop over the route above described, taking it up the ladder one step at a time. When the piston reached the machine shop it was examined and returned to the lower engine room over the same route. Appellee then took the second piston and carried it up in the same way to the machine shop where it too was checked. He then took this piston back again to the lower engine room. Appellee testified that after this his back felt tight and "it was a pretty heavy lift." Appellee then testified that he took the crosshead up toward the machine shop and on the way he heard a slight "pop" in his lower back. He did not feel any immediate pain, and after putting the crosshead down for a few moments, he "kind of straightened" himself out and picked up the crosshead, and continued to the machine shop. In the machine shop he did certain work upon the crosshead.

He left the crosshead in the machine shop for further repair and went back to the engine room. His back was beginning to pain him at that time and he reported that fact to his superior, the second engineer. After resting for a while he went up to his quarters. About four o'clock he reported his condition to the first engineer and was told to knock off for the rest of the day. The ship sailed the next day for Honolulu, and appellee

stayed in his bed during the trip. He testified that he was suffering pain in his right hip and right leg. He was given medical attention by the ship's doctor during the trip. In Honolulu appellee received further medical and hospital care, and was certified as unfit for duty. Transportation was arranged for him to fly to San Francisco where he received medical attention at the Public Health Service Marine Hospital. He remained in the hospital for 17 or 18 days and was in traction. Upon discharge he received out-patient care and was finally declared permanently unfit for sea duty in October, 1964. He remained in that status up until the time of trial.

The injuries received by appellee on February 19, 1964, were diagnosed as "a lateral compression fracture of the body of his third lumbar vertebra with nerve root compression and irritation at that level of his spine, causing him much pain and resulting weakness and atrophy of the musculature of his right leg."

Among others, the district judge made the following findings:

6. The job of dismantling this particular pump and carrying its parts to the ship's Machine Shop for repair was rated aboard Respondent's vessel as a two-man job. One of the ship's oilers had, in fact, been assigned to help Libelant with dismantling the pump on the morning of the date of the accident, but the oiler's time was up at noon and he went off duty. Libelant was not provided with a substitute helper and he was left to transport the parts from the pump to the Machine Shop and complete the job alone.

7. In the early afternoon of said date, Libelant proceeded to lift and carry each of the pistons from their location near the pump up to the Machine Shop where he checked them over and then he carried each piston back down from the Shop to the pump. Libelant also lifted and carried the crosshead from the pump up the ladder and over the coaming of the watertight door leading toward the Machine Shop and felt a "pop" in his back. He set the crosshead down and was unable to finish the job. He immediately reported his condition to his superior officers who relieved him from further duty. Libelant sustained injuries to his back and spine in the course of lifting and carrying the crosshead from the pump to the Machine Shop aboard the vessel unassisted on the early afternoon of February 19, 1964.

8. The failure of Respondent, on the afternoon of February 19, 1964, to provide Libelant with sufficient men, specifically an additional man along with Libelant, to perform the required task of dismantling the ship's standby steam oil lube service pump and transporting its parts from the pump to the ship's Machine Shop for repair rendered Respondent's vessel, the SS. President Roosevelt, unseaworthy in that regard.

9. Libelant sustained severe, painful and permanent injuries and damages as a direct and proximate result of the aforesaid unseaworthiness of said vessel.

\* \* \* \* \* \*

19. Libelant has sustained damages in the total sum of Thirty-Eight Thousand Four Hundred Fifty Dollars ($38,450) as a direct and proximate result of the accident suffered by him aboard the SS President Roosevelt on February 19, 1964.

20. Libelant was guilty of contributory negligence for his failure to request additional help of his superiors to aid him in his assigned task on the afternoon of February 19, 1964. Libelant's own negligence, as aforesaid, contributed fifty per cent (50%) to the accident and the consequences to him.

21. After deducting for Libelant's contributory fault the sum of Nineteen Thousand Two Hundred Twenty-Five Dollars ($19,225), which represents fifty per cent (50%) of Libelant's total damages, the total amount recoverable by Libelant from the respondent in this case is the sum of Nineteen Thousand Two Hundred Twenty-Five Dollars ($19,225).

Appellant makes the following specifications of errors:

1. The District Court's Finding No. 6 is clearly erroneous to the extent that it states that carrying the crosshead in this case was rated as a two-man job, since there was no evidence that the carrying of such a 42-pound crosshead was a two-man job.

2. The District Court erred in finding and holding (Finding No. 8: Conclusion No. 2) that the vessel was unseaworthy because it failed to provide two men to carry the 42-pound crosshead, since the carrying of such an object by one man was within usual and customary standards and the warranty of seaworthiness with respect to crew requires that the vessel be adequately manned overall but not that a particular number of men be assigned to perform each task aboard.

■ The contention as to Specification No. 1 is quickly answered. There is ample testimony in the record not only that the work of dismantling and repairing this pump was a two-man job but there was also testimony that the carrying of each piston and of the crosshead was a two-man job. Appellant produced no witness to testify to the contrary.

■ The owner of a vessel has an absolute and non-delegable duty to provide a seaworthy ship. Mahnich v. Southern S. S. Co., 321 U.S. 96, 64 S.Ct. 455, 88 L.Ed. 561; Hudson Waterways Corp. v. Schneider, 365 F.2d 1012, 1014 (9th Cir. 1966). Not only must the things about a ship be reasonably fit for the purpose for which they are to be used, Gutierrez v. Waterman S. S. Corp., 373 U.S. 206, 83 S.Ct. 1185, 10 L.Ed.2d 297, but the ship must be properly manned. "[T]o be inadequately or improperly manned is a classic case of an unseaworthy vessel. See Boudoin v. Lykes Bros. S. S. Co., Inc., 1955, 348 U.S. 336, 75 S.Ct. 382, 99 L.Ed. 354, 1955 A.M.C. 488." June T., Inc. v. King, 290 F.2d 404, 407 (5th Cir. 1961).

■ Appellant asserts that they are obligated to provide an adequate overall crew but not an adequate number of men for each task on the vessel. American President Lines, Ltd. v. Redfern, 345 F.2d 629 (9th Cir. 1965) is to the contrary and is controlling. In that case the watch officer ordered Redfern to "go down and change from high suction to low suction," an operation that required opening the gate valves located on either side of the vessel and closing a corresponding pair of valves at a higher level. He attempted to open one of the valves by turning its 30-inch diameter wheel but it was stuck. On the third attempt to turn the wheel he injured his back. This court held:

"A stuck sea valve, the trial judge found—and the finding is supported by substantial evidence—is suitable only if operated by two men; otherwise, it constitutes a dangerous condition. * * * In this setting, we are satisfied that the court was justified in determining that the HOOVER was not reasonably fit for service because she was improperly manned—'a classic case of an unseaworthy vessel.'"

■ In the present case repairing the lube pump was a two-man job and it was dangerous for one man to proceed alone. We hold that the SS PRESIDENT ROOSEVELT was improperly manned when appellee repaired the lube pump without being supplied with adequate help.

■ Appellee has cross-appealed from the finding of his contributory negligence. Contributory negligence is not an absolute defense under maritime law, but rather it is a basis to apportion damage. The trial court found appellee contributorily negligent in the amount of 50 per cent because he failed to request additional help; we are bound by this finding unless it is "clearly erroneous." American President Lines, Ltd. v. Redfern, supra.

■ Appellee's superior officer was in the engine room while appellee repaired the lube pump. He had authority to assign an extra man to help in the repair if requested. In our opinion it

was not clearly erroneous to hold that a reasonable man would have asked for help and the fact that appellee did not ask for help contributed to his resulting injury.

Judgment affirmed.