Walter ADAMS, Appellant,

v.

UNITED STATES of America and California Stevedore & Ballast Company, Appellees.

No. 21818.

United States Court of Appeals Ninth Circuit.

April 9, 1968.

---

3. See, also, e. g., Allison v. Snelling & Snelling, Inc., 425 Pa. 519, 229 A.2d 861, 864 (1967).

**904**

Van H. Pinney (argued), Dorsey Redland, John A. McGuinn, Jr., San Francisco, Cal., for appellant.

Gerald A. Falbo (argued), Admiralty & Shipping Section, Department of Justice, John F. Meadows, West Coast Office Admiralty & Shipping Section, Attorney in Charge, Cecil F. Poole, U. S. Atty., Partridge, O'Connell, Partridge & Fall, San Francisco, Cal., Edwin L. Weisl, Asst. Atty. Gen., Civil Division, Washington, D. C., for appellees.

Before POPE, BROWNING and DUNIWAY, Circuit Judges.

POPE, Circuit Judge.

This action was brought in the court below by a libel in personam seeking damages for personal injuries sustained by the plaintiff, appellant here, aboard the USNS PVT. JOSEPH MERRELL, here called MERRELL, while he was engaged as a longshoreman in loading cargo. The libel stated two causes of action: unseaworthiness of the vessel MERRELL and negligence of the defendant United States. In its answer the United States denied the allegations of the libel and impleaded California Stevedore and Ballast Company, plaintiff's employer, as third party defendant.

At the time in question, appellant was a member of an eight man gang stowing boxed ammunition into the wings of the hold of the ship. The loading process consisted of stowing large "conax" vans, seven to nine feet in height and then stowing smaller cargo on top of the vans in an area between their top and the ceiling of the hold. When plaintiff received his injuries he was in the process of assisting with the stowing of small boxes of ammunition on top of the conax vans in the manner mentioned. He was operating a fork lift truck in the No. 2 hold and also assisting in hand-stowing the small arms ammunition into the wings. On the forks of the fork lift truck he was operating he had a pallet load of boxed small arms ammunition. He drove the truck to a place where he could raise it to the level of the top of the conax, a height of between seven and nine feet; he then turned off the engine, dismounted, blocked the wheels of the truck and then climbed up to the pallet board and attempted to walk to the cargo table along the edge of the pallet board. At this time he fell, receiving the injuries of which he complains. The pallet board was so loaded that it left a narrow edge of six to eight inches on which he could walk.

The plaintiff tried his case on the theory that the pallet board was insufficient and broke permitting him to fall. Thus he asserts that he is entitled to recover for unseaworthiness. No one witnessed the fall but a longshoreman testified that he observed Adams lying on the deck and observed a piece of wood of two inch thickness which apparently had broken off the pallet board. The pallet board was constructed of boards of two inch thickness.

The findings of the trial court recite that "it is unlikely that a two inch board would have broken. However, it is not necessary to determine if the pallet board broke or if Adams merely slipped, to dispose of this case." The court then referred to safety and health regulations for longshoremen promulgated by the U.S. Department of Labor, (29 CFR Part 9), which provide that "pallets shall

be of such material and construction and so maintained as to safely support and carry loads being handled on them." It found that this pallet board measured up to that standard; that it did safely support and carry small arms ammunition; and it interpreted the regulation as not requiring the pallet board to be sufficient to carry a man standing on its edge in addition to the load of ammunition.

The court then proceeded to describe the manner in which the eight members of the gang employed to hand stow the cargo were disposed. The court described the manner in which they operated, referring to it as the "four on, four off" system. Under this system, which was in effect at the time of plaintiff's injury, four men of the eight man crew, were working while four were resting and sitting around. Under that arrangement four men would work for an hour while four were doing nothing, and then the four idle men would work the next hour while the first group of four rested for an hour. Because of this the court found that it became necessary for the plaintiff to leave his fork lift operator's seat to assist in the hand stowage of the cargo, and that if eight men were working on this task this would not have been necessary.[1]

The court found that the system just described rendered the operation unsafe; that with four men on and four men off, in the manner indicated, there were insufficient number of men present to safely do the work. The court held that if prudent and safe practices had been followed whereby all eight men in the gang were available for the stowage, plaintiff would not have had to leave his fork lift operator's seat as there would have been two men available to unload the pallet board without having to call on plaintiff to assist.

Included in the court's conclusions of law was the following: "4. The sole cause of the accident was the plaintiff's own actions in engaging in the 'four on, four off' system of performing work and in leaving the driver's seat of the fork lift truck with a loaded pallet board suspended in the air." Thus the court made it plain that its conclusion was that the accident was caused by the failure to use a sufficient number of longshoremen in the loading process.

The court's findings thus demonstrated a typical case of unseaworthiness. It is well settled that an unsafe method of work creates liability for unseaworthiness. Splosna-Plovba v. Garcia, 9 Cir., Feb. 6, 1968, 390 F.2d 41; Blassingill v. Waterman Steamship Corp., 9 Cir., 336 F.2d 367, 369; Mahnich v. Southern S.S. Corp., 321 U.S. 96, 103; and discussion in Gilmore & Black, The Law of Admiralty, § 6-39. Cf. Belships Company, Ltd. v. Bilbao, 9 Cir., Feb. 27, 1968, 390 F.2d 642. It does not appear from the record whether the shipowner had notice of this unsafe method of work but such notice of unseaworthy condition need not be given to the shipowner in order that liability for unseaworthiness may attach. Mitchell v. Trawler Racer Inc., 362 U.S. 539, 549–550, 80 S.Ct. 926, 4 L.Ed.2d 941; Alaska Steamship Co. v. Petterson, 347 U.S. 396, 74 S.Ct. 601, 98 L.Ed. 798; Lahde v. Soc. Armadora Del Norte, 9 Cir., 220 F.2d 357, 360; Huff v. Matson Navigation Co., 9 Cir., 338 F.2d 205, 215; Boudoin v. Lykes Bros. S.S. Co., 348 U.S. 336, 75 S.Ct. 382, 99 L.Ed. 354, and discussion in Black & Gilmore, Law of Admiralty, § 6-44 at 331–332, n. 251.

It is plain therefore that the court was in error in concluding that there was no proof of unseaworthiness in this case. The question then arises as to what further steps must be taken to bring this cause to a conclusion. The language used by the court in the last quoted portions of its conclusions would indicate that it was of the view that the

---

[1]. The court said: "It is self evident that such a system is little more than wholesale cheating by the longshoring gang which resulted in an insufficient number of men to safely do the work."

plaintiff ought not to have participated in this "four on, four off" procedure. Of course, if the court were to find the plaintiff guilty of negligence, such negligence might operate under the rules applicable in admiralty to reduce the plaintiff's recovery. Pope & Talbot, Inc. v. Hawn, 346 U.S. 406, 408, 74 S.Ct. 202, 98 L.Ed. 143. However, we are of the opinion that the findings in this case disclose that there was no duty on the part of the plaintiff to refrain from participating in the "four on, four off" procedures. In the language of the court "this was a customary practice for the last twenty years in the San Francisco Bay area." Moreover, plaintiff was not a gang boss and had no control over the procedures or modes of loading the ship.

We think that particularly applicable here is the language used by the court in Ballwanz v. Isthmian Lines, Inc., 4 Cir., 319 F.2d 457, 462, as follows: "The plaintiff was one of a gang of eight longshoremen working in the hold of the defendant ship. He had no responsibility for, or authority over, any of his fellow workers. His duty was to do his work as he was instructed. He was in no sense obligated to protest against the method of operation which he had been instructed to follow or to devise a safer method, nor was he obligated to call for additional or different equipment. If the doctrine of seaworthiness means anything, it is totally repugnant to the doctrine of assumption of risk on the part of seamen. The plaintiff in this case was at the very bottom of the hierarchy of command, and the effect of the charge was to place too much responsibility upon him for the over-all operations of the stevedore. The courts have held that where a seaman has a choice between a seaworthy or an unseaworthy part of a ship his use of the latter will not relieve the owner of his responsibility. * * * Certainly if a seaman may deliberately choose an unseaworthy part of a ship without losing his right of recovery then he is under no obliga-

tion to complain about his orders or to insist on better equipment."

■ The damages recoverable by the plaintiff are not subject to any reduction because of any negligence on his part. But there are remaining issues requiring findings of the trial judge. Although the court made allusion to some of the damages suffered (something not appropriate in view of its finding of no liability), yet no reference was made to the possibility of plaintiff having experienced pain and suffering. Such would be recoverable. A. H. Bull Steamship Co. v. Ligon, 5 Cir., 285 F.2d 936, 938, 88 A.L.R.2d 479; Nicroli v. Den Norske Afrika-Og Australielinie, etc., 2 Cir., 332 F.2d 651, 653; Thompson v. Calmar Steamship Corporation, 3 Cir., 331 F.2d 657, 662.

Another issue remaining to be tried by the court is raised by the petition of the United States under which California Stevedore and Ballast Company was brought into the case through the assertion of the United States that California Stevedore and Ballast Company was employed to perform the stevedoring services aboard the vessel; that it undertook to perform such service in a safe workmanlike manner and took exclusive custody and control of the holds, hatchways and decks in the cargo areas. It is the claim of the United States that if plaintiff sustained injuries, as he alleges, those injuries were proximately caused by the negligence and carelessness of the impleaded respondent; and if the United States is under any liability by reason of injuries to the plaintiff, such liability should be borne by the impleaded respondent by way of full indemnity.

This claim of the United States against California Stevedore and Ballast Company based on a warranty of workmanlike services is set forth in the pretrial order as an issue to be tried. It and the question of damages remain to be tried and the cause is now remanded to the district court with directions to pro-

ceed to try such issues on further hearing.

The judgment is reversed and the cause is remanded for the purposes herein stated.