Vivian R. ADAMS, Individually and as the Personal Representative and Administratrix of the Estate of James E. Adams, Deceased, Plaintiff-Appellant,

v.

UGLAND MANAGEMENT CO. et al., Defendants-Appellees.

No. 73–3010.

United States Court of Appeals, Ninth Circuit.

April 23, 1975.

Ronald H. Klein, San Francisco, Cal. (argued), for plaintiff-appellant.

Frederick J. Woelflen, San Francisco, Cal. (argued), for defendants-appellees.

OPINION

Before CHAMBERS and MERRILL, Circuit Judges, and EAST,* District Judge.

MERRILL, Circuit Judge:

This is a wrongful death action brought by the widow of a longshoreman who drowned in the waters of San Francisco Bay at Richmond, California, while engaged in docking a vessel. Appellee Ugland Management Co. is the owner of the vessel. Plaintiff asserts liability on the alternative grounds of negligence of the ship's officers and unseaworthiness of the vessel. Finding no factual issue upon either theory of liability and concluding as matter of law that neither could prevail upon the undisputed facts, the district court granted summary judgment in favor of appellees. We affirm.

* Honorable William G. East, Senior United States District Judge for the District of Oregon, sitting by designation.

The district court stated the relevant facts as follows:

"The undisputed facts indicate that * * * the decedent, [his fellow employee, Norman] and a third linesman, McGowan, were engaged in tying up the Ugland vessel late in the evening. The three linesmen received no instructions on tying since they were experienced and knew what to do. A mooring line was thrown from the ship, and attached to the mooring line was a heaving line. After one of the mooring lines was attached to a bitt on the dock, the ship's mate instructed the men to move the line to another bitt. The linesmen themselves, Norman and McGowan, decided to throw the mooring line into the water since it would be easier thereby to move it to the next bitt. As they began pulling on the line, however, the heaving line became hooked on the side of the dock. At that time, the two linesmen asked the decedent to climb down on the side on the dock and free the heaving line. As he did so, he fell into the water and drowned."

■ We agree with the district court that no breach of duty owing to the crew of longshoremen by the ship's officers has been shown, and that no factual issue on the claim of negligence has been presented.

As to the claim of unseaworthiness, the district court regarded Usner v. Luckenbach Overseas Corp., 400 U.S. 494, 91 S.Ct. 514, 27 L.Ed.2d 562 (1971) as controlling. We agree.

The Court there stressed that "unseaworthiness is a *condition* * * *." *Id.* at 498, 91 S.Ct. 514. It stated:

"A vessel's condition of unseaworthiness might arise from any number of circumstances. Her gear might be defective, her appurtenances in disrepair, her crew unfit. The number of men assigned to perform a shipboard task might be insufficient. The method of loading her cargo, or the manner of its stowage, might be improper. For any of these reasons, or others, a vessel might not be reasonably fit for her intended service."

*Id.* at 499, 91 S.Ct. at 517. Distinguishing the situation there presented, the Court stated:

"What caused the petitioner's injuries in the present case, however, was not the condition of the ship, her appurtenances, her cargo, or her crew, but the isolated, personal negligent act of the petitioner's fellow longshoreman. To hold that this individual act of negligence rendered the ship unseaworthy would be to subvert the fundamental distinction between unseaworthiness and negligence that we have so painstakingly and repeatedly emphasized in our decisions. In [Mitchell v.] Trawler Racer, *supra*, [362 U.S. 539, 80 S.Ct. 926, 4 L.Ed.2d 941 (1960)] there existed a condition of unseaworthiness, and we held it was error to require a finding of negligent conduct in order to hold the shipowner liable. The case before us presents the other side of the same coin. For it would be equally erroneous here, where no condition of unseaworthiness existed, to hold the shipowner liable for a third party's single and wholly unforeseeable act of negligence."

*Id.* at 500, 91 S.Ct. at 518. *Usner* has been followed by this court in Ryan v. Pacific Coast Shipping Co., Liberia, 509 F.2d 1054 (9th Cir. 1975).

■ In the case before us, as we view it, the injury resulted from the "isolated, personal negligent act" of attempting to free the snagged line by climbing down the side of the dock rather than utilizing available ship's equipment to winch the line back.

Appellant characterizes the cause of injury as an "unsafe or improper method of work" which, this court has held, can constitute a condition of unseaworthiness.[1] Here appellant asserts the crew

---

1. Adams v. United States, 393 F.2d 903 (9th Cir. 1968); Belships Co. v. Bilbao, 390 F.2d 642 (9th Cir. 1968); Splosna-Plovba v. Garcia, 390 F.2d 41 (9th Cir. 1968); Blassingill v. Waterman Steamship Corp., 336 F.2d 367 (9th Cir. 1964).

resorted to an improper method of berthing the ship.

That which caused injury, however, was a very small part of the business of berthing the ship. It was the course chosen by the crew to effect a disengagement of the snagged line. The question is whether this was pursuant to "method" as that term is used in the cases on which appellant relies. In our judgment it was not. Each of those cases involved ongoing procedures regularly practiced by the crew of longshoremen in the use of ship's gear to unload freight.[2] Thus the method operated upon the ship itself or its cargo or the crew of longshoremen to create a condition under which the crew was numerically insufficient, the cargo was improperly stowed, or the gear was inadequate.

Here there is nothing in the record to suggest that there was any established practice regularly followed by the crew at Richmond respecting the freeing of snagged lines. From common experience in absence of proof one would assume that each snagged line presents its own circumstances and that each case is attacked individually rather than by resort to established general practice. It was not method, then, but the course chosen to meet this single, isolated problem, that created the hazard. A single, isolated act of negligence under *Usner* can, in our view, consist of a reckless choice of solution to an isolated problem as well as an isolated act in performance of ongoing duty.

Nor can it be said that with its mooring line snagged the ship was in an abnormal condition requiring correction and that this rendered her unseaworthy. The need for correction did not create hazard since correction could be accomplished without risking danger. It was the reckless means chosen for unsnagging the line that created hazard. The business of docking a ship or unloading its cargo constantly presents the members of the crew with the necessity for choosing between alternative ways of doing the multitude of acts required. The fact that a reckless choice of alternatives is always a possibility does not serve to render unseaworthy each ship awaiting docking or unloading.

Judgment affirmed.

*Belships* automobiles were stowed in such a way that unloading them involved hazardous method. In *Splosna-Plovba* bundles of lumber were unloaded by a method which was hazardous in light of the manner in which the bundles were stowed. In *Blassingill* the sling was regularly overloaded.

---

2. Appellant relies on the cases cited in note 1. In *Adams* the "method" held to be unsafe was the established practice of the employees of the stevedoring company to use only half the crew at any time, the other half "resting," with the result that unloading was handled with insufficient men to do the job safely. In